FILED
FEB 2 2 2011
Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

---

RON KIZER, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

SUMMIT PARTNERS, L.P.,

    Defendant.

---

1:11-CV-38
Collier/Carter

**CLASS ACTION COMPLAINT
and
JURY TRIAL DEMAND**

Plaintiff Ron Kizer ("Plaintiff") on behalf of himself and a class of those similarly situated, by way of Complaint against Summit Partners, L.P. ("Defendant" or "Summit") by and through his counsel allege as follows:

### NATURE OF THE ACTION

1. This is a civil action for the collection of unpaid wages and benefits for sixty (60) calendar days pursuant to the Worker Adjustment and Retraining Notification Act of 1988 ("WARN"), 29 U.S.C. §§ 2101, et. seq. Although the Plaintiff and the other similarly situated former employees nominally worked for and/or reported to Inctenium, LLC ("Incentium"), Summit owned and completely controlled Incentium and ordered the shutdown of Incentium, and was thus the "employer" of the Plaintiff and the other similarly situated employees under the WARN Act's "single employer" provision. As such, the Defendant is liable under the WARN Act for the failure to provide the Plaintiff and the other similarly situated former employees at least 60 days' advance notice of their termination, as required by the WARN Act.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 and 29 U.S.C § 2104 (a)(5).

3. The facility at which the Plaintiff and other similarly situated employees worked was located in this district.

4. Venue in this Court is proper pursuant to 29 U.S.C. § 2104(a)(5).

## THE PARTIES

5. Plaintiff Ron Kizer was nominally employed by Incentium and reported to a facility located at 328 Cherokee Boulevard, Chattanooga, Tennessee (the "Facility") until his termination on or about February 9, 2011.

6. Upon information and belief, at all relevant times, Summit was a California corporation headquartered at 499 Hamilton Avenue, Palo Alto, California.

7. Until on or about February 9, 2011, the Plaintiff and all similarly situated employees worked at or reported to the Facility.

8. On or about February 9, 2011, Plaintiff and other similarly situated employees' employment was terminated without cause as part of a plant closing at the Facility as defined by 29 U.S.C. § 2101 (a), for which they were entitled to receive 60 days advance written notice under the WARN Act (the "Plant Closing").

9. At or about the time the Plaintiff was terminated, approximately 85 other similarly situated employees who worked at or reported the Facility were terminated.

## CLASS ACTION ALLEGATIONS – 29 U.S.C. § 2101 (a)

10. Pursuant to 29 U.S.C. § 2101 (a)(2), (3), the Plaintiff maintains this action on behalf of himself and on behalf and a class of persons who worked at or reported to the Facility and were terminated without cause on or about February 9, 2011, were terminated

without cause within 30 days of February 9, 2011, or were terminated without cause as the reasonably foreseeable consequence of the Plant Closing ordered by Defendant on or about February 9, 2011, and who are affected employees, within the meaning of 29 U.S.C. § 2101 (a)(5) (the "Class Members").

11. Incentium was substantially owned and entirely controlled by Summit.

12. Incentium did not maintain any board of directors. Instead, all key decisions relating to Incentium were made by Summit's board of directors.

13. All of Incentium's labor policies including all decisions to hire and fire key personnel were made by Summit.

14. Specifically, Summit made the decision to hire Richard Phillips, Incentium's Chief Executive Officer; Tom Venable, Incentium's Senior Vice President of Sales; and Sarah Sampson, Incentium's Senior Vice President of Marketing.

15. Additionally, Summit made the decision to fire Richard Char, Incentium's original Chief Executive Officer and Patricia Gildea, Incentium's original Chief Financial Officer.

16. On information and belief, Summit controlled all of Incentium's labor and employee relations and labor policy decisions.

17. On information and belief, Summit made the labor decisions concerning Plaintiff's and the Class Members' employment, including the decision to terminate their employment on or about February 9, 2011.

18. On February 3, 2011, a conference call was held between Incentium employees and former founder and owner of Incentium, Hamid Andalib, who advised Incentium employees that Summit had asked him to purchase the company and that if he did not purchase the company, Summit would shut down Incentium.

19. Based upon Summit's complete control over Incentium and over its labor policies and decisions, as well as Summit's decision to order the Plant Closing, Summit was the "employer" of the Plaintiff and the Class Members pursuant to the WARN Act's "single employer" provision.

20. On or about February 9, 2011, Summit ordered a "Plant Closing," as that term is defined by 29 U.S.C. § 2101(a).

21. Each of the other employees terminated without cause on or about February 9, 2011 is similarly situated to the Plaintiff in respect to his or her rights under the WARN Act.

22. Defendant was required by the WARN Act to give the Plaintiff and the other similarly situated former employees at least 60 days advance written notice of their respective terminations.

23. Prior to their termination, neither the Plaintiff nor the other similarly situated former employees received written notice that complied with the requirements of the WARN Act.

24. Summit failed to pay the Plaintiff and the other similarly situated former employees their respective wages, salary, commissions, bonuses, and accrued holiday pay vacation, which would have accrued for sixty (60) days following their respective terminations without notice and failed to make 401(k) contributions and provide them with health insurance coverage and other employee benefits.

**CLASS ACTION ALLEGATIONS RULES 23 (a) and (b)**

25. Plaintiff sues under Rule 23(a) and (b) of the Federal Rules of Civil Procedure, on behalf of himself and the Class Members who worked at or reported to the Facility and were terminated without cause on or about February 9, 2011, were terminated without cause

within 30 days of February 9, 2011, or were terminated without cause as the reasonably foreseeable consequence of the Plant Closing ordered by Defendant on or about February 9, 2011, and who are affected employees.

26. The Class Members are so numerous that joinder of all members is impracticable.

27. There are questions of law and fact common to the Class Members that predominate over any questions affecting only individual members.

28. The claim of the representative party is typical of the claims of the Class Members.

29. The representative party will fairly and adequately protect the interests of the class.

30. The Plaintiff has retained counsel competent and experienced in complex class action employment litigation.

31. A class action is superior to other available methods for the fair and efficient adjudication of this controversy—particularly in the context of WARN Act litigation, where individual plaintiffs and class members may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

32. There are questions of law and fact common to the Class Members that predominate over any questions solely affecting individual members Class Members, including but not limited to:

>  (a) Whether the Class Members were employees of Defendant's who worked at or reported to the Facility;

(b) Whether Defendant, as a single employer, terminated the employment of the Class Members without cause on their part and without giving them 60 days advance written notice; and

(c) Whether the Defendant was subject to any of the exceptions provided for in the WARN Act.

## CLAIM FOR RELIEF

33. At all relevant times, the Defendant employed 100 or more employees, including the employees who worked at or reported to the Facility, exclusive of part-time employees, or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States as defined by 20 U.S.C. § 2101 of WARN and as a single employer, employed more than 50 employees at the Facility.

34. At all relevant times, the Defendant was an "employer," of the Class Members as that term is defined in 29 U.S.C. § 2101(a)(1) of WARN and 20 C.F.R. § 639.3(a).

35. Defendant's actions at the Facility resulted in an "employment loss" as that term is defined by 29 U.S.C. §2101(a) for at least 33% of its workforce, and at least 50 of its employees, excluding (a) employees who worked less than six of the twelve months prior to the date WARN notice was required to be given and (b) employees who worked an average of less than 20 hours per week during the 90-day period prior to the date WARN notice was required to be given.

36. Defendant's permanent termination of the Class Members' employment constituted a Plant Closing as defined by 29 U.S.C. § 2101 of WARN.

37. The Plaintiff and the Class Members who were employed by Defendant and then terminated by Defendant as a result of Defendant's executing a Plant Closing at the

Facility on or about February 9, 2011 were "affected employees" as defined by 29 U.S.C. § 2101 of WARN.

38. The Plaintiff and each of the Class Members are "aggrieved employees" of the Defendant as that term is defined in 29 U.S.C. § 2101 (a)(7).

39. Pursuant to 29 U.S.C. § 2102 of WARN and 20 C.F.R. § 639.1 - § 639.10 et. seq., Defendant was required to provide at least 60 days prior written notice of the termination, or notice as soon as practicable, to the affected employees, explaining why the sixty (60) days prior notice was not given.

40. Defendant failed to give at least sixty (60) days prior notice of the termination in violation of WARN.

41. The Defendant failed to pay the Plaintiff and each of the Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 working days following their respective terminations, and failed to make the pension and 401(k) contributions, provide other employee benefits under ERISA, and pay their medical expenses for 60 calendar days from and after the dates of their respective terminations.

42. As a result of Defendant's failure to pay the wages, benefits and other monies, the Aggrieved Employees were damaged in an amount equal to the sum of the members' unpaid wages, accrued holiday pay, accrued vacation pay, accrued sick leave pay and benefits which would have been paid for a period of sixty (60) calendar days after the date of the members' terminations.

43. WHEREFORE, the Plaintiff and Class Members demand judgment against the Defendant as follows:

    a. An amount equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay pension and 401(k) contributions and other

ERISA benefits, for sixty (60) working days following the member employee's termination, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104(a)(1)(A);

      b.    Certification that, pursuant to Fed. R. Civ. P. 23 (a) and (b) and the WARN Act, 29 U.S.C § 2104(a)(5), Plaintiff and the Class Members constitute a single class;

      c.    Interest as allowed by law on the amounts owed under the preceding paragraphs;

      d.    The reasonable attorneys' fees and the costs and disbursements the Plaintiff incurs in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104(a)(6); and

      e.    Such other and further relief as this Court may deem just and proper.

Dated: February 18, 2011

BY: _____
BRANSTETTER, STRANCH &
 JENNINGS, PLLC
J. Gerard Stranch, IV
State Bar No. 023045
227 2nd Avenue, Suite 400
Nasvhille, TN 37201
P: (615)254-8801
F: (615)250-3937

LANKENAU & MILLER, LLP
Stuart J. Miller (SJM 4276)
132 Nassau Street, Suite 423
New York, NY 10038
P: (212) 581-5005
F: (212) 581-2122

THE GARDNER FIRM, P.C.
Mary E. Olsen
M. Vance McCrary
David C. Tufts
210 S. Washington Ave.
Post Office Drawer 3103
Mobile, AL 36652
P: (251) 433-8100

Cooperating Counsel for
THE NLG MAURICE AND JANE SUGAR
LAW CENTER FOR ECONOMIC AND
SOCIAL JUSTICE, a non-profit law firm
733 St. Antoine, 3rd Floor
Detroit, Michigan 48226
P: (313) 962-6540

*Attorneys for Plaintiff*