UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| RON KIZER, on behalf of himself and all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) SUMMIT PARTNERS, L.P., ) ) Defendant. ) | 1:11-CV-38<br><br>Chief Judge Curtis L. Collier |

## **MEMORANDUM**

On June 27, 2012, the Court held a Final Fairness Hearing to resolve two pending matters: (1) whether the Court would grant final approval of the parties' settlement agreement and (2) if so, what attorney's fees to award to Plaintiff's counsel.[1] The Court heard oral arguments from both Plaintiff's counsel and Defendant's counsel at the hearing. Plaintiff's counsel also submitted a brief in support of final approval of the preliminarily approved class settlement agreement (Court File No. 30) as well as an accompanying affidavit (Court File No. 30-1) and supplement to the affidavit (Court File No. 31).

After considering the relevant case law, counsel's arguments, and the filings in this case, the Court **GRANTS** final approval of the parties' settlement agreement (Court File No. 23). The Court also **APPROVES** Plaintiff's counsel's request for attorney's fees and a service fee to the class representative.

---

[1] The parties originally submitted a joint motion for settlement (Court File No. 23). In a memorandum and order issued on May 7, 2012, this Court granted in part the parties' motion (Court File Nos. 28, 29). In particular, this Court certified the proposed settlement class, preliminarily approved the settlement agreement, approved the form and manner of notice to the settlement class, and scheduled a Final Fairness Hearing. The Court reserved ruling on the parties' request for final approval of the settlement agreement, which is now one of the pending issues before this Court.

## I. FACTS AND PROCEDURAL HISTORY

### A. Complaint and Basis of Action[2]

On February 22, 2011, Plaintiff filed a Class Action Complaint against Defendant in the United States District Court for the Eastern District of Tennessee. In the Complaint, Plaintiff alleges Defendant violated the Worker Adjustment and Retraining Notification Act of 1988 (the "WARN Act"), 29 U.S.C. §§ 2101 *et seq.*, under a "single employer" theory of liability (Court File No. 1 ¶ 1). Although the Complaint states Plaintiff and similarly situated employees nominally worked for or reported to Incentium, LLC, it also alleges Defendant owned, completely controlled, and ordered the shutdown of Incentium, making it an employer for purposes of the WARN Act (*id.*). The Complaint alleges Defendant employed 100 or more employees who worked at least 4,000 hours per week within the United States (*id.* ¶ 33).

The Complaint further alleges Defendant effected a "Plant Closing" as defined by the WARN ACT on or about February 9, 2011, at the facility located at 328 Cherokee Boulevard, Chattanooga, Tennessee (the "Facility") (*id.* ¶¶ 5, 20). As explained in the Complaint, the Plant Closing resulted in a loss of employment for at least 50 employees and at least 33% of the employees at the Facility, excluding part-time employees (*id.* ¶ 35). The Complaint states Plaintiff and other similarly situated employees at the Facility were terminated without cause on or about February 9, 2011, and none received at least sixty-days advance written notice of the termination as required by the WARN Act (*id.* ¶¶ 21-23, 39-40). Moreover, the Complaint alleges Defendant

---

[2] The factual background included in the Court's May 7, 2012 Memorandum and Order (Court File No. 28) is incorporated herein.

failed to pay Plaintiff and the other similarly situated employees wages and benefits that accrued during the sixty days following their terminations without notice (*id.* ¶¶ 24, 31). In the Complaint, Plaintiff seeks certification of a class pursuant to Fed. R. Civ. P. 23(a) and 23(b) that would include himself and any similarly situated former employee terminated without cause from the Facility on or about February 9, 2011, or who suffered a loss of employment as the reasonably foreseeable consequence of the plant closing *(id.* ¶ 25).

### B. Settlement Agreement

On December 7, 2011, before the Court could rule on Plaintiff's motion for class certification, the parties filed a joint motion for settlement (Court File No. 23).[3] In the motion, the parties explained they had executed a settlement agreement. The parties requested that the Court preliminarily approve their settlement agreement, approve the form and manner of notice to the proposed settlement class, schedule a Final Fairness Hearing for the final consideration and approval of the settlement, and, finally, approve the settlement.

On April 18, 2012, the Court held a hearing on the parties' joint motion for settlement. In an order and memorandum issued May 7, 2012, the Court granted preliminary approval of the settlement agreement (Court File Nos. 28, 29). The Court also certified the proposed settlement class, approved the form and manner of notice to the proposed settlement class, and scheduled the Final Fairness Hearing.

On June 21, 2012, Plaintiff filed a brief and affidavit stating that notices were mailed to the last known address of each member of the settlement class on May 9, 2012 (Court File Nos. 30, 30-

---

[3] Plaintiff had previously filed a motion for class certification (Court File No. 13). Defendant did not oppose certification of the class in this action (Court File No. 22).

1). The objection and opt-out deadline included in the notice was June 18, 2012. Of the ninety-three notices mailed, only eight of the ninety-three were returned undelivered as addressed. In a second mailing attempt, only one notice of the remaining eight was returned. At the Final Fairness Hearing, Plaintiff's counsel stated that it had since obtained an address for the one remaining settlement class member and, to date, that notice had not been returned as undelivered. The parties contend no objections or requests to opt-out have been submitted by any of the settlement class members.

The settlement agreement provides for a total award amount of $275,000 (Court File No. 23-1). The class representative will receive $3,000 for his services rendered in this action. The balance of $272,000, minus one-third attorney's fees, will be divided among the settlement class members on a pro rata basis according to their final pay rates.

## II.   FAIRNESS HEARING

Ordinarily a fairness hearing involves the issue of class certification. This Court, however, made an initial determination regarding certification of the proposed settlement class when the parties sought preliminary approval of the settlement agreement. This Court considered the relevant case law and the parties' arguments, and determined certification of Plaintiff's proposed settlement class was appropriate pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) (Court File Nos. 28, 29). The Court now reaffirms its decision for the reasons stated in its May 7, 2012 Memorandum and Order (*see id.*).

A court may approve a proposed settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). *See Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001) (citation omitted) (noting the standard for approval is "whether the

4

Case 1:11-cv-00038-CLC-WBC   Document 33   Filed 07/10/12   Page 4 of 10   PageID #: 326

proposed settlement is fair, adequate, and reasonable under the circumstances, and whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued"). In determining whether to grant final approval of a settlement, a court should consider the following factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

### A. Risk of Fraud or Collusion

At the hearing for preliminary approval of the settlement, the parties explained to the Court the nature of their negotiations. The parties informed the Court that they had engaged in extensive arms' length, good faith negotiations over several months prior to reaching a settlement. At that time, the Court concluded there was no indication of fraud or collusion. The Court reaches this same conclusion after hearing from the parties at the Final Fairness Hearing.

### B. Complexity, Expense and Likely Duration of the Litigation

As noted by Plaintiff, the parties have litigated this case for approximately 16 months. They have already engaged in extensive discovery, but additional discovery would be needed if the parties were to proceed to trial. Dispositive motions would likely need to be filed and resolved by the Court. Also, the trial itself would be both costly and time consuming. Plaintiff anticipates that, if the parties had not settled, the parties would be embroiled in years of litigation (i.e. also taking into account the appeals process).

### C. Amount of Discovery Engaged in by the Parties

5

As noted above, the parties have engaged in extensive discovery, although more discovery would be necessary if the case was to proceed to trial. In an affidavit, Plaintiff asserts the parties engaged in informal discovery and the exchange of initial disclosures (Court File No. 30-1). The parties worked from May to August 2011 to further determine the proper scope of discovery. Prior to reaching the settlement, Plaintiff claims Defendant had already produced thousands of pages of documents, which Plaintiff subsequently reviewed. Plaintiff also claims it had sought to depose four of Defendant's employees. Based on the assertions made in Plaintiff's affidavit, it appears both parties conducted sufficient discovery to determine the main legal issues as well as the strength of their positions; this discovery then informed the parties' decision to settle.

**D.     Likelihood of Success on the Merits**

Both parties contend they would have had strong cases had they proceeded to trial. If Plaintiff prevailed at trial, Plaintiff would be able to recover approximately $700,000. Plaintiff claims the greatest challenge it would face if it proceeded with litigation, however, would be establishing its "single employer" theory of liability. Plaintiff argues that, under this theory, it must demonstrate that a parent company, such as Defendant, is liable for a subsidiary's WARN Act violations when the two entities constitute a single business enterprise. *See In re APA Transp. Corp. Consol. Litig.*, 541 F.3d 233, 242-44 (3d Cir. 2008). To make this determination, the Court must consider the following factors: "(i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations." 20 C.F.R. § 639.3(a)(2). Plaintiff claims some recent decisions in similar WARN Act cases have been unfavorable to Plaintiff's position. Plaintiff also notes that Defendant has asserted several defenses that may make Plaintiff's success at trial uncertain.

6

Accordingly, in light of these concerns regarding the strength of Plaintiff's case, the settlement agreement--which provides for one-third of the potential full recovery for the settlement class--is reasonable.

### E. Opinions of Class Counsel and Class Representatives

At both the hearing for preliminary approval of the settlement and the Final Fairness Hearing, the Court observed that Plaintiff and the class were represented by experienced and competent counsel. Lankenau and Miller has been appointed class counsel in 75 WARN Act actions and participated in over 160 cases (Court File No. 30-1). Plaintiff is also represented by counsel from the Gardner Firm, which is currently involved in 30 WARN Act cases. Finally, Branstetter, Stranch, & Jennings has experience in numerous complex class actions. Plaintiff's counsel contends the settlement agreement is fair and reasonable, and no concerns have been raised by the class representative.

### F. Reaction of Absent Class Members

The parties have mailed notices to all ninety-three settlement class members. According to Plaintiff's affidavit, only one notice remained undelivered (Court File No. 30-1). At the Final Fairness Hearing, Plaintiff's counsel updated the Court that the one remaining notice was mailed to a new address and, to date, has not been returned. No objections or requests to opt-out have been filed by any of the settlement class members.

### G. Public Interest

Although this case will not directly impact the public, the public does have an interest in the resolution and settlement of cases in a fair and reasonable manner. The anticipated complexity and time-consuming nature of this case would also presumably drain limited judicial resources.

7

Each factor above weighs in favor of final approval of the settlement. Therefore, for all of the reasons already stated, this Court **GRANTS** final approval of the parties' settlement agreement.

### III.  ATTORNEY'S FEES

Next, the Court must determine what amount of attorney's fees to award to Plaintiff's counsel. Counsel contends attorney's fees in the amount of one-third (33.3%) of the settlement amount, after a service fee is paid to Plaintiff, would be fair and reasonable. The total award would be $90,666.67. The Sixth Circuit has expressed that, in common fund cases, the only requirement is that the award of attorney's fees "be reasonable under the circumstances." *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). A district court's determination of an attorney's fee award is given great deference so long as the court adequately explains its reasoning. *Id.* A court's explanation should include a discussion of the following factors:

> (1) the value of the benefit rendered to the plaintiff class . . .;
> (2) the value of the services on an hourly basis;
> (3) whether the services were undertaken on a contingent fee basis;
> (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;
> (5) the complexity of the litigation; and
> (6) the professional skill and standing of counsel involved on both sides.

*Bowling v. Pfizer, Inc*., 102 F.3d 777, 780 (6th Cir. 1996).

In its brief, Plaintiff's counsel highlights the general rule that "fee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created." *Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich. 1993) (approving a fee award that would be the equivalent of 45.3% of the

8

total fund). Plaintiff's counsel cites to several other cases in support of its position. *See, e.g.*, *In re Rio Hair Naturalizer Prods. Liab. Litig.*, MDL No. 1055, 1996 WL 780512, at *16 (E.D. Mich. Dec. 20, 1996) (counsel sought award of 25%); *In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986) (counsel sought award of approximately 18%); *In re Dun*, 130 F.R.D. at 372 (counsel sought award of 15%).

The Court concludes that each of the *Bowling* factors are satisfied in this case. First, Plaintiff will receive significant value from the settlement. Although Plaintiff could potentially receive $700,000 if counsel prevailed at trial, the complex legal and factual issues of this case make success at trial uncertain. Therefore, the settlement of $275,000 is reasonable, and counsel played a significant role in securing this settlement for Plaintiff and the settlement class. Second, Plaintiff's counsel contends the value Plaintiff has received far exceeds what Plaintiff would have received in light of counsel's hourly rates. Plaintiff's counsel asserts its firms have performed $130,498.50 in hourly work in this case. Yet, in seeking attorney's fees, they are only seeking approximately 70% of this lodestar amount. Counsel also notes it is not seeking a separate award for expenses or compensation for the additional work it must perform to distribute the settlement funds. Third, Plaintiff's counsel undertook this case on a contingent fee basis. Fourth, as noted by Plaintiff's counsel, society has a great stake in rewarding attorneys who seek to hold employers responsible for violating the WARN Act. Fifth, the parties have demonstrated that WARN Act litigation involves complex legal issues. And finally, the parties on both sides are highly respected and qualified.

Taking all of these factors into account, Plaintiff's counsel has demonstrated that its award is fair and reasonable. Moreover, none of the absent class members has objected to the requested

9

award of attorney's fees, which further supports the Court's decision. Accordingly, the Court will **APPROVE** Plaintiff's counsel's request for attorney's fees in the amount of one-third of the settlement, after the $3,000 service fee is paid to Plaintiff.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** final approval of the parties' settlement agreement (Court File No. 23). The Court also **APPROVES** Plaintiff's request for attorney's fees in the amount of one-third of the settlement, after a service fee is paid to the class representative (that is, Plaintiff Ron Kizer). Finally, the Court **APPROVES** the $3,000 service fee to the class representative.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

10